# EXHIBIT 4

**OPEN SOCIETY**
JUSTICE INITIATIVE

**James A. Goldston**
Executive Director

justiceinitiative.org

**OPEN SOCIETY**
FOUNDATIONS

**Open Society
Justice Initiative**
224 West 57th Street
New York, NY 10019, USA

p. +1 212-548-0600
f. +1 212-548-4608

**July 9, 2020**

*Via email*

**DEPARTMENT OF STATE**
Office of Information Programs &
Services, A/GIS/IPS/RL
SA-2, Suite 8100
Washington, DC 20522-0208
FOIARequest@state.gov

**DEPARTMENT OF JUSTICE**
FOIA/PA Mail Referral Unit
Room 115
LOC Building
Washington, DC 20530-0001
MRUFOIA.Requests@usdoj.gov

**DEPARTMENT OF TREASURY**
FOIA and Transparency
Washington, DC 20220
treasfoia@treasury.gov

Re:     **Freedom of Information Act Request**
        **Expedited Processing and Fee Waiver Requested**

This letter constitutes a request ("Request") pursuant to the Freedom of Information
Act ("FOIA"), 5 U.S.C. § 552, and the implementing regulations of your agency,
submitted on behalf of the Open Society Justice Initiative ("Justice Initiative"), an
operational program of the Open Society Institute ("OSI"), a New York State
charitable trust and nonprofit organization. We request records concerning events
leading to the June 11, 2020 Executive Order issued by President Donald Trump
relating to travel and economic sanctions against the International Criminal Court
("ICC" or "Court") and persons associated with it. We respectfully ask that this
request is forwarded to any other component agency as appropriate. Expedited
processing is requested pursuant to 5 U.S.C. § 552(a)(6)(E), as is a fee waiver,
pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).

**A. BACKGROUND**

On November 3, 2017, the ICC Presidency assigned to a Pre-Trial Chamber of the
Court a request from the ICC Prosecutor, Fatou Bensouda, for judicial authorization
of an investigation into alleged crimes committed in connection with the armed
conflict in Afghanistan.[1] The request sought an investigation focused "solely upon
war crimes and crimes against humanity allegedly committed since 1 May 2003 on
the territory of Afghanistan as well as war crimes closely linked to the situation in
Afghanistan allegedly committed since 1 July 2002 on the territory of other States
Parties to the Rome Statute,"[2] the treaty that established the ICC.

---

[1] International Criminal Court (The Presidency), *Decision assigning the situation in the Islamic
Republic of Afghanistan*, No. ICC-01/17, Nov. 3, 2017, *available at* https://www.icc-
cpi.int/CourtRecords/CR2017_06574.PDF.
[2] *Statement of ICC Prosecutor, Fatou Bensouda, regarding her decision to request judicial
authorisation to commence an investigation into the Situation in the Islamic Republic of Afghanistan*,
ICC, Nov. 3, 2017, https://www.icc-cpi.int/Pages/item.aspx?name=171103_OTP_Statement.

As noted by the White House, the "Prosecutor indicated this investigation would focus on Afghan National Security Forces, the Taliban, and the Haqqani network, alongside war crimes allegedly committed by United States service members and intelligence professionals during the war in Afghanistan." [3] On September 10, 2018, the White House issued a release warning that should the ICC proceed with an investigation, the Administration "will consider…ban[ning] ICC judges and prosecutors from entering the United States, sanction their funds in the United States financial system, and, prosecute them in the United States criminal system." [4]

On March 15, 2019, Secretary of State Mike Pompeo announced that the U.S. would impose visa restrictions on "individuals directly responsible for any [ICC] investigation of U.S. personnel." [5] On April 3, the Office of the Prosecutor of the ICC ("OTP") confirmed that the Prosecutor's visa was revoked. [6] On April 12, the ICC Pre-Trial Chamber rejected the Prosecutor's request to investigate the situation in Afghanistan. [7] On June 7, the Prosecutor sought leave to appeal the decision. [8] On September 17, the Chamber partially granted the Prosecutor's request, allowing a limited appeal to proceed. [9] On October 9, Secretary Pompeo issued a restatement noting that the U.S. policy on the ICC remained unchanged. [10]

On March 5, 2020, the Appeals Chamber of the ICC decided unanimously to authorize the Prosecutor's investigation into the situation in Afghanistan, amending the original Pre-Trial Chamber's April 12 decision. [11] On March 17, Secretary Pompeo announced that the U.S. would seek to sanction OTP staff members Sam Shoamanesh (*chef de cabinet*) and Phakiso Mochochoko (Head of Jurisdiction, Complementarity, and Cooperation), along with their families, for assisting the Prosecutor's efforts to pursue an investigation into the situation in Afghanistan. [12]

On May 29, Secretary Pompeo stated that the public would soon see "a series of announcements from not just the State Department, [but] from all across the United States government that attempt to push back against what the ICC is up to." [13] On June 11, President Trump issued Executive Order 13928, *Blocking Property Of Certain Persons Associated With The International Criminal Court* ("EO") that outlined a prospective framework to impose economic and travel sanctions on persons associated with or supporting the ICC. The EO invokes four laws: the National Emergencies Act (50 U.S.C. 1601 et seq.) ("NEA"), which enables the president to declare a national emergency; the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) ("IEEPA"), a sanctions regime; the Immigration and Nationality Act

[3] *Protecting American Constitutionalism and Sovereignty from the International Criminal Court*, White House, Sept. 10, 2018, https://www.whitehouse.gov/briefings-statements/protecting-american-constitutionalism-sovereignty-international-criminal-court/.

[4] *Id.*

[5] Lesley Wroughton, *U.S. imposes visa bans on International Criminal Court investigators*, Reuters, Mar. 15, 2019, https://www.reuters.com/article/uk-usa-icc/u-s-imposes-visa-bans-on-international-criminal-court-investigators-pompeo-idUSKCN1QW1ZH.

[6] Stephanie van den Berg & Leslie Wroughton, *U.S. revokes ICC prosecutor's entry visa over Afghanistan investigation*, Reuters, Apr. 4, 2019, https://www.reuters.com/article/us-usa-icc-prosecutor/u-s-revokes-icc-prosecutors-entry-visa-over-afghanistan-investigation-idUSKCN1RG2NP.

[7] Situation in the Islamic Republic of Afghanistan, Investigation, ICC-02/17, ICC, https://www.icc-cpi.int/afghanistan.

[8] *Id.*

[9] *Id.*

[10] *U.S. Policy on the International Criminal Court Remains Unchanged*, U.S. Dep't of State, Oct. 9, 2019, https://www.state.gov/u-s-policy-on-the-international-criminal-court-remains-unchanged/.

[11] Situation in the Islamic Republic of Afghanistan, Investigation, ICC-02/17, ICC, https://www.icc-cpi.int/afghanistan.

[12] *Secretary Michael R. Pompeo's Remarks to the Press*, Dep't of State, Mar. 17, 2020, https://www.state.gov/secretary-michael-r-pompeo-remarks-to-the-press-6.

[13] *Secretary Michael R. Pompeo With Marc Thiessen and Danielle Pletka of AEI's 'What The Hell Is Going On' Podcast*, U.S. Dep't of State, May 29, 2020, https://www.state.gov/secretary-michael-r-pompeo-with-marc-thiessen-and-danielle-pletka-of-aeis-what-the-hell-is-going-on-podcast/.

of 1952 (8 U.S.C. 1182(f)) ("INA"), which permits the exclusion of foreign nationals from entering the United States; and section 301 of title 3, United States Code, which authorizes the president to delegate powers to executive agencies. The EO describes the ICC's investigation of U.S. personnel and personnel of U.S. allies that have not consented to ICC jurisdiction as "an unusual and extraordinary threat to the national security and foreign policy of the United States" and as such, the President must declare "a national emergency to deal with that threat."[14]

As written, the EO does not result in the automatic designation of any person or entity. Instead, it lists the categories of persons and entities that can be sanctioned, as to be determined by the Secretary of State, in consultation with the Secretary of Treasury and the Attorney General. Those impacted by the EO include U.S. persons, including U.S. entities, as well as foreign persons and foreign entities, along with property inside and outside the United States.

## B. RECORDS REQUESTED

The Justice Initiative requests expedited disclosure of records,[15] including communications,[16] created on or after November 3, 2017,[17] including:

1. All records that include the following terms:
   a. "Int! Crim! Court", ICC or "Rome Statute" AND:
      i. "Ex! Or!" or "EO"
      ii. "National Emergencies Act" or NEA
      iii. "International Emergency Economic Powers Act" or IEEPA
      iv. sanction! or designat!
      v. "First Am!", "1st Am!" or "1A" (as it pertains to the "First Amendment")
      vi. defer! or "art! 16"
   b. "Fatou Bensouda", Bensouda, "ICC Prosecutor", or OTP
   c. "Sam Shoamanesh" or Shoamanesh
   d. "Phakiso Mochochoko" or Mochochoko
   e. "ICC judg!"

2. Cables and other communications to and from U.S. embassies regarding policy positions, requests and queries, to and from their host government(s) pertaining to the ICC.

---

[14] Executive Order 13928, *Executive Order on Blocking Property Of Certain Persons Associated With The International Criminal Court*, Jun. 11, 2020.

[15] For the purpose of this request, the term "records" includes, but is not limited to, any and all agendas; agreements; analyses; calendars; correspondence; data; databases; directives; documents; e-mails and e-mail attachments, including those sent through personal email accounts (e.g., Gmail); reports; rules; schedules; studies; tables of contents and contents of binders; talking points; technical specifications; training materials; examinations; faxes; files; guidance; guidelines; evaluations; instructions; letters; manifests; manuals; memoranda; notes; orders; prepared documentation for meetings, calls, teleconferences, or other discussions responsive to our request; policies; procedures; protocols; text messages and messages sent or received through other messaging applications (e.g., WhatsApp, iMessage, Signal); voicemails; and any other materials. In the event that such records once existed but have now been destroyed, please disclose any records that are integrally related to, summarize, or are interchangeable with said records. *Press clippings and news articles that are unaccompanied by any commentary need not be produced.*

[16] For the purpose of this request, the term "communications" includes, but is not limited to, directives, cables, memoranda; correspondence; briefings; e-mails and e-mail attachments, including sent through personal email accounts (e.g., Gmail); faxes; instructions; letters; text messages and messages sent or received through other messaging applications (e.g., WhatsApp, iMessage, Signal); and voicemails. In the event that such communications once existed but are no longer available, please disclose any records that are integrally related to, summarize, or are interchangeable with said records.

[17] The date the ICC Presidency assigned the Afghanistan situation to a Pre-Trial Chamber in anticipation of the Prosecutor's request for authorization to investigate. International Criminal Court (The Presidency), *Decision assigning the situation in the Islamic Republic of Afghanistan*, No. ICC-01/17, Nov. 3, 2017, *available at* https://www.icc-cpi.int/CourtRecords/CR2017_06574.PDF.

## C. APPLICATION FOR EXPEDITED PROCESSING

The Justice Initiative requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E), as the records requested are urgently needed to inform the public about actual or alleged government activity, *see* 5 U.S.C. § 552(a)(6)(E)(v)(II), and the Justice Initiative is an organization "primarily engaged in disseminating information…to inform the public concerning" that activity. 5 U.S.C. § 552(a)(6)(E)(v)(I-II). While meeting the FOIA's expedition requirements, the Justice Initiative also requests expedition on the grounds that failure to obtain requested records on an expedited basis could impair or result in the loss of substantial due process rights per agency's regulations. *See* 28 CFR § 16.5(e)(iii); 31 CFR § 1.4(e)(iii); 22 CFR § 171.11(f)(3). **We affirm that the following information and statements concerning the need for expedited processing are true and correct to the best of our knowledge and belief.**

The Justice Initiative is "primarily engaged in disseminating information" within the meaning of the FOIA.[18] *Am. Civil Liberties Union v. Dep't of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding that a non-profit, public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" is "primarily engaged in disseminating information" within the meaning of the statute and regulations); *cf. Elec. Privacy Info. Ctr. v. U.S. Dep't of Def.*, 241 F. Supp. 2d 5, 11-12 (D.D.C. 2003) (finding that the Electronic Privacy Information Center was a representative of the news media based on its publication of seven books about national and international policies relating to privacy and civil rights); *see also Nat'l Sec. Archive v. U.S. Dep't of Def.*, 880 F.2d 1381, 1386 (D.C. Cir. 1989) (National Security Archive deemed a representative of the news media after publishing one book and indicating its intention to publish a set of documents on national and international politics and nuclear policy).

The Justice Initiative is an operating public interest law center dedicated to upholding human rights and the rule of law through litigation, advocacy, research, and technical assistance, with offices in New York, London and Berlin. It is part of the Open Society Institute ("OSI"), a tax-exempt, non-partisan, not-for-profit organization, headquartered in New York City. OSI believes that solutions to national, regional and global challenges require the free exchange of ideas and thought, and works to build vibrant and inclusive societies, grounded in respect for human rights and the rule of law, whose governments are accountable and open to the participation of all people. In support of their shared mission, OSI and the Justice Initiative share information with the public free of charge, through their websites, newsletters, and other publications to promote public understanding and robust debate. Disseminating information is among the Justice Initiative's core activities. To accomplish its goals, the Justice Initiative maintains a website, www.justiceinitiative.org, through which it disseminates reports, briefing papers, fact sheets and other publications (www.justiceinitiative.org/publications) relating to its mission, as well as records produced through FOIA requests.[19] It also directly distributes hard copies of publications and disseminates information via quarterly email newsletters, blogs (www.opensocietyfoundations.org/voices), Twitter (www.twitter.com/OSFJustice) and Facebook (www.facebook.com/OpenSocietyFoundations).

At this moment, it is unclear who and what activities are subject to sanction or punishment under the terms of the EO. No further guidance on how the EO may be applied has been released, leaving individuals associated with the ICC and its work uncertain about whether they might be targets and whether they should avoid certain activities. As described by a former Senior Advisor to the Director of the U.S. Treasury Department's Office of Foreign Assets Control (OFAC), the lead agency charged with

---

[18] *See* 5 U.S.C. § 552(a)(6)(E)(v)(II).
[19] *See e.g.*, *Open Society Justice Initiative v. Central Intelligence Agency (CIA) et al.*, 44795-Jamal-Khashoggi-FOIA, *available at* https://www.documentcloud.org/public/search/projectid:44795-Jamal-Khashoggi-FOIA.

implementing and enforcing economic sanctions, the EO is a "naked EO" since no one is yet designated.[20] This type of EO results in uncertainty for individuals regarding how to tailor their behavior so not to risk designation, leading to the conclusion "that the goal is to chill current and future activities."[21]

The EO has become a source of considerable confusion given the breadth and ambiguity of its provisions. Law professors, lawyers, advocates and non-governmental organizations have all publicly expressed concern that, without more information, their activities appear to possibly fall within the terms of the EO.[22] Laws that are overbroad or unclear can lead people to refrain from engaging in permissible actions because they are unsure whether they will be legally sanctioned, creating a "chill" under the "threat of enforcement."[23] It is well-established under U.S. constitutional jurisprudence that the terms of a law "must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties…and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of *due process* of law."[24]

As written, the EO is open-ended, giving officials broad leeway in its application, implicating even family members of ICC personnel, academics, human rights advocates and nongovernmental organizations, who are connected to or work with the ICC. It also affects those U.S. persons serving the ICC in its three primary organs (i.e. OTP, Chambers, Registry), including staff, interns, consultants and advisors, as well as businesses providing services to the Court. The day following the EO's release, the *American Bar Association*, the largest association of lawyers in the world and "the national voice of the legal profession," released a statement noting it was "deeply disturbed" by the EO.[25] On June 26, a group of 174 U.S. lawyers and legal scholars, working across 80 U.S. universities and including three former U.S. ambassadors, U.S. lawyers who participated in cross-jurisdictional war crimes cases, and the last surviving U.S. Nuremberg prosecutor, sent a letter to the White House asking the president to rescind the EO, citing that it is "wrong in principle," "contrary to American values" and "mock[ed] our bipartisan commitment to human rights and the rule of law."[26]

---

[20] Adam M. Smith, *Dissecting the Executive Order on Int'l Criminal Court Sanctions: Scope, Effectiveness, and Tradeoffs*, Just Security, Jun. 15, 2020, https://www.justsecurity.org/70779/dissecting-the-executive-order-on-intl-criminal-court-sanctions-scope-effectiveness-and-tradeoffs/.

[21] *Id.*

[22] *See e.g.*, Leila Sadat, *First They Came For Me and My Colleagues: The U.S. Attack on the Int'l Criminal Court*, Just Security, Jun. 29, 2020, https://www.justsecurity.org/70996/first-they-came-for-me-and-my-colleagues-the-us-attack-on-the-intl-criminal-court/; Diane Marie Amann, *I help children in armed conflict. The President is forcing me to stop*, Just Security, Jun. 29, 2020, https://www.justsecurity.org/71048/i-help-children-in-armed-conflict-the-president-is-forcing-me-to-stop/; Jennifer Trahan & Megan Fairlie, *The International Criminal Court is Hardly a Threat to US National Security*, Opinio Juris, Jun. 15, 2020; http://opiniojuris.org/2020/06/15/the-international-criminal-court-is-hardly-a-threat-to-us-national-security/; *Human Rights First Criticizes Trump Administration Executive Order On the ICC*, Human Rights First, Jun. 11, 2020, https://www.humanrightsfirst.org/press-release/human-rights-first-criticizes-trump-administration-executive-order-icc; *Open Society Condemns Trump Administration for Undermining International Rule of Law*, Open Society Foundations, Jun. 11, 2020, https://www.opensocietyfoundations.org/newsroom/open-society-condemns-trump-administration-for-undermining-international-rule-of-law; Letter to President Donald Trump Against Sanctions on ICC Investigators of Atrocities, *available at* https://www.scribd.com/document/467370291/Lawyers-statement-on-ICC-sanctions.

[23] *U.S. v. Williams*, 553 U.S. 285, 292 (2008).

[24] *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926) (emphasis added).

[25] *ABA President Judy Perry Martinez statement Re: U.S. sanctions of International Criminal Court personnel*, Am. Bar Ass'n., Jun. 12, 2020, https://www.americanbar.org/news/abanews/aba-news-archives/2020/06/aba-president-judy-perry-martinez-statement-re--u-s--sanctions-o/

[26] Letter to President Donald Trump Against Sanctions on ICC Investigators of Atrocities, *available at* https://www.scribd.com/document/467370291/Lawyers-statement-on-ICC-sanctions. *See also,* Gen. Wesley K. Clark, *The United States Has Nothing to Fear From the ICC*, Foreign Policy, Jul. 2, 2020, https://foreignpolicy.com/2020/07/02/the-united-states-has-nothing-to-fear-from-the-icc/.

U.S. sanctioning action usually involves accused terrorists, weapons proliferators or perpetrators of human rights violations.[27] However, this EO is unprecedented because it targets and potentially violates the free speech and due process rights of law-abiding U.S. nationals and/or entities.[28] The Supreme Court holds firm that the right of speech is a "transcendent value,"[29] entitled to special protections as it is so "supremely precious."[30] This has resulted in robust jurisprudence barring activity that may "chill" protected speech, by recognizing, and guarding against, the myriad ways that government action can restrict it.[31] As noted by legal experts, "the vaguely drafted Order is overbroad in many ways"[32] "that will cause, at a minimum, a chilling effect on NGO's, businesses, academics, and academic institutions, as well as others, who directly or indirectly do business, advise, or support the ICC in any manner."[33] As such, it is urgent that the public have access to information that can inform it of the motivations behind, and specifics of, the EO so that they can engage in activities without fear.

Since the Justice Initiative is an organization "primarily engaged in disseminating information" and this Request seeks records to inform the public of urgently needed information regarding government activity, expedition must be granted.

### D. APPLICATION FOR FEE WAIVER

We request a waiver of search, review and duplication fees on the grounds that disclosure of the requested information "is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

As set forth in the Section above, the information and records at issue will contribute significantly to the public understanding of the implications of the EO in question and its application. Furthermore, the Justice Initiative, a non-profit entity, does not seek disclosure of these records for commercial gain and intends to disseminate the information disclosed from this request to the public at no cost.

For the same reasons that render the Justice Initiative as "primarily engaged in disseminating information," *see* Section C. *supra*, it is also a "representative of the news media" within the meaning of the FOIA. As such, it is entitled to a fee waiver. *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II). *See also Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (recognizing Congress's intent that FOIA's fee waiver provision is to be "liberally construed in favor of waivers for noncommercial requesters").

\* \* \* \* \*

Pursuant to 5 U.S.C. § 552(a)(6)(E)(ii)(I) and 5 U.S.C. § 552(a)(6)(A)(i), respectively, we look forward to your reply to the request for expedited processing within ten calendar days, and to the request for disclosure within twenty days.

---

[27] Christopher A. Casey et al., *The International Emergency Economic Powers Act: Origins, Evolution, and Use* (R45618) Cong. Research Serv., Mar. 20, 2019, *available at* https://fas.org/sgp/crs/natsec/R45618.pdf.

[28] For a discussion on how broad EO provisions can implication free speech and due process rights, *see* Andrew Boyle, *Recent North Korea Arrest Raises Questions About Free Speech Rights,* Brennan Center, Apr. 30, 2020, https://www.brennancenter.org/our-work/analysis-opinion/recent-north-korea-arrest-raises-questions-about-free-speech-rights.

[29] *Speiser v. Randall*, 357 U.S. 513, 526 (1958).

[30] *NAACP v. Button*, 371 U.S. 415, 433 (1963).

[31] *See* Leslie Kendrick, *Speech, Intent, and the Chilling Effect*, 54 Wm. & Mary L. Rev. 1633, 1651 n.88. (2013).

[32] Jennifer Trahan & Megan Fairlie, *The International Criminal Court is Hardly a Threat to US National Security*, Opinio Juris, Jun. 15, 2020, http://opiniojuris.org/2020/06/15/the-international-criminal-court-is-hardly-a-threat-to-us-national-security/.

[33] David M. Crane, *The Wrong Side of History—The United States and the International Criminal Court*, Jurist, Jun. 13, 2020, https://www.jurist.org/commentary/2020/06/david-crane-wrong-history-icc/.

We request that responsive records are provided electronically in their native file format. *See* 5 U.S.C. § 552(a)(3)(B). Alternatively, we request that the records are provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, Bates-stamped files. Press clippings and news articles that are unaccompanied by any commentary need not be produced.

If this request is denied in whole or part, please justify all withholdings by reference to specific exemptions and statutes, as applicable. For each withholding, please also explain why your agency "reasonably foresees that disclosure would harm an interest protected by an exemption" or why "disclosure is prohibited by law[.]" 5 U.S.C. § 552(a)(8)(A)(i). We seek the release of all segregable portions of otherwise exempt material, *see* 5 U.S.C. § 552(b). We also reserve the right to appeal any decision in relation to this Request.

Thank you for your prompt attention to this Request. Please send all records and correspondence by email to Natasha Arnpriester at Natasha.Arnpriester@opensocietyfoundations.org.

Sincerely,

Natasha Arnpriester
Betsy Apple
Christian De Vos
James A. Goldston
Open Society Justice Initiative
224 West 57th Street
New York, New York 10019
T: (212) 548 0600
F: (212) 548 4662

7